UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLACKS IN TECHNOLOGY INTERNATIONAL, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:20-CV-03008-X |
| BLACKS IN TECHNOLOGY LLC, GREGORY GREENLEE, and DENNIS SCHULTZ, | § § § § | |
| *Defendants.* | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are counter-defendant Blacks in Technology LLC's motion for judgment on the pleadings on the counterclaims brought against it by counter-counter-plaintiff, Peter Beasley [Doc. No. 147], Beasley's motion to strike that motion for judgment on the pleadings [Doc. No. 148], and Beasley's motion to dismiss Blacks in Technology LLC's counterclaims against him [Doc. No. 151].  For the reasons explained below, the Court **GRANTS** Blacks in Technology LLC's motion for judgment on the pleadings, **DISMISSES** Beasley's civil RICO claims **WITH PREJUDICE**, and **DISMISSES** Beasley's state law claims **WITHOUT PREJUDICE**.  The Court **DENIES** Beasley's motion to strike.  And the Court **GRANTS** Beasley's motion to dismiss and **DISMISSES** Blacks in Technology LLC's counterclaims against Beasley **WITH PREJUDICE**.

1

# I.    Background

This lawsuit arises from the relationship between this case's original plaintiff Blacks in Technology International ("International"), original defendant Blacks in Technology LLC ("BIT LLC"), and non-party Blacks in Technology Foundation ("BIT Foundation").  BIT Foundation is a non-profit corporation founded and operated by original defendant Gregory Greenlee.  BIT Foundation's goal is to "assist and encourage black members of the information technology industry."[1]  Meanwhile, BIT LLC is a for-profit business, also operated by Gregory Greenlee, which generates income through activities such as operating a job-posting boards and selling online media advertisements.  Original plaintiff International is a not-for-profit corporation founded and operated by Peter Beasley.  Beasley, though not a party to this suit's original claims, is now a counter-defendant and, having brought his own counterclaims, a counter-counter-plaintiff.  Notably, Beasley has been declared a "vexatious litigant" by Texas courts, as authorized by the Texas legislature.[2]

The allegations in this case are many and meandering, and not every detail requires recitation here.  So, the Court will briefly summarize them before focusing on the allegations specifically relevant to the present motions.  In June 2019, after he had become involved with the organization's Dallas chapter, Beasley began to assist BIT Foundation on a national level.  Then, in the spring of 2020, Beasley incorporated International.  According to International, Greenlee had promised Beasley that BIT

---

[1] Doc. No. 147 at 3.

[2] Doc. No. 147-1.

Foundation would not compete with International, and "further promised to allow [International] to use the BIT 'brand,' including trademarks, on a perpetual, royalty-free basis."[3]  And, purportedly with Greenlee's approval, Beasley then began to help "various local chapters operating under the banner 'Blacks in Technology'" officially establish themselves under the auspices of International.[4]  Beasley also solicited various donations and sponsorships for International.  But during the summer of 2020, the relationships between International, BIT Foundation, and BIT LLC, as well as those between Beasley and Greenlee themselves, began to break down, and this lawsuit quickly followed in September 2020.

International sued BIT LLC, Greenlee, and Schultz, alleging a variety of misconduct.  International claims that BIT LLC and Greenlee have converted funds belonging to International, including those generated by contributions intended for International.  International claims that Greenlee and Dennis Schultz have tortiously interfered with contracts International entered into with local Blacks in Technology chapters by "redirecting their monthly contributions, falsely claiming to be associated with such chapters, and using chapter names and chapter leadership photographs without the consent of the respective chapters."[5]  International claims that Schultz breached a contract requiring him "to cease activities as the New York Metropolitan Chapter of BIT in the event he terminated his relationship

---

[3] Doc. No. 46 at 3.  Though it was originally known as "BIT National," International modified its name to "BIT International" in April 2020.  *Id.* at 1 n.1.  For the sake of simplicity, the Court refers to International by this modified name throughout this opinion.

[4] *Id.*

[5] Doc. No. 46 at 15.

with [] International,"[6] because of which "International was unable to continue operating within the New York Metropolitan area without incurring significant expense of time and money to develop the base of participants in the area."[7]  Finally, International claims that Greenlee fraudulently induced International to "commence operations" by promising that BIT Foundation would not operate any longer and that International would have perpetual access to the BIT trademarks on a royalty-free basis.[8]  According to International, BIT Foundation's failure to cease operations as promised, "including [by] collecting funds rightfully belonging to [] International, undermined [] International's efforts and prevented [] International from fulfilling its ultimate purpose."[9]

BIT LLC countersued International, as well as Blacks in Technology Texas ("BIT Texas"), Blacks United in Leading Technology International ("BUILT"), and Beasley himself.  BIT LLC claims that these parties committed various violations under the Lanham Act.  BIT LLC also claims that Beasley defrauded it by incorporating International and Blacks in Technology Dallas ("BIT Dallas") without its permission and then convincing BIT LLC that International was its subsidiary.

Then, Beasley countersued.  Beasley—who is proceeding *pro se*—brings several civil RICO claims against BIT LLC, Greenlee, and Schultz, the details of which are discussed at further length below.  Beasley also claims that BIT LLC, Greenlee, and

---

[6] *Id.*

[7] *Id.* at 16.

[8] *Id.*

[9] *Id.* at 16–17.

Schultz defamed Beasley on multiple occasions.  Relatedly, Beasley claims that they formed a civil conspiracy to "overthrow" Beasley and "take-over" International by "remov[ing] Beasley from [International's] leadership by an illegal method—*using defamation*."[10]

Since becoming a party to this suit, Beasley has played a very active role in its litigation.  He has filed a slew of motions, including two motions to sanction BIT LLC's attorneys from Hartline Barger LLP,[11] as well as a motion to disqualify them.[12] Beasley also recently filed a related *pro se* lawsuit in the Northern District of Texas against BIT LLC, BIT Foundation, Greenlee, Schultz, and other parties including the Ohio Secretary of State.[13]  Although that case is in its infancy, Beasley has been similarly active in it, already filing a motion to disqualify attorneys from the law firm of Cooper & Scully P.C. "to avoid committing a fraud on the Court."[14]

Today, the Court considers Beasley's Rule 12(b)(6) motion to dismiss the counterclaims against him; BIT LLC's, Greenlee's, and Schultz's Rule 12(c) motion for judgment on the pleadings on Beasley's claims against them; and Beasley's motion to strike the Rule 12(c) motion.

---

[10] Doc. No. 62 at 24, 25, and 35.

[11] Doc. No. 171 at 1 (arguing that "[s]ince the establishment of this court in 1879, there has likely never been such a blatant disregard for the rules of law, and ignoring of requirements for lawyers to verify the veracity of their court filings, and of such a colossal waste of judicial resources as which has been and continues to be perpetrated by attorney Colin L. Powell, Hartline Barger LLC, and by their associates"); Doc. No. 182.

[12] Doc. No. 214.

[13] *Beasley v. Greenlee*, No. 3:22-CV-00532-M-BT (N.D. Tex.) (Lynn, C.J.).

[14] *Id.* at Doc. No. 25.

## II.     Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[15]  A claim is plausible when it "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[16] which requires "more than a sheer possibility that [the] defendant has acted unlawfully."[17]  "[A] formulaic recitation of the elements of a cause of action will not do."[18]  And the pleading must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[19]  The court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[20]  "While, for purposes of Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint . . . the stated claim must nevertheless be 'plausible on its face' to survive a motion to dismiss."[21]

Because BIT LLC's claim against Beasley involves fraud, its countercomplaint must satisfy heightened pleading requirements.  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  "At a minimum, Rule 9(b) requires allegations of the

---

[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[17] *Id.*

[18] *Id.* (cleaned up).

[19] *Id.*

[20] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (cleaned up).

[21] *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) (quoting *Twombly*, 550 U.S. at 570).

particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[22] "Put simply, Rule 9(b) requires the who, what, when, where, and how of the fraud."[23] And the Fifth Circuit's "precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[24]

Meanwhile, "[a] motion [for judgment on the pleadings] brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicial noticed facts."[25]  "The standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6)."[26]

### III.   Analysis

### A.  Beasley's 12(b)(6) Motion to Dismiss for Failure to State a Claim

First, the Court considers Beasley's motion to dismiss the BIT LLC's counterclaims against him.  [Doc. No. 161.]  As mentioned above, BIT LLC claims that Beasley incorporated International, along with Blacks in Technology Dallas,

---

[22] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

[23] *Ranieri v. AdvoCare Int'l*, 336 F. Supp. 3d 701, 712 (N.D. Tex. 2018) (Scholer, J.) (quoting *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

[24] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (cleaned up).

[25] *Hale v. Metrex Research Corp.*, 963 F.3d 424, 427 (5th Cir. 2020) (cleaned up).

[26] *Id.*

without BIT LLC's "permission, authority, or agreement."[27]  Next, BIT LLC alleges that Beasley defrauded it by "convinc[ing] BIT LLC, that [International] was created as a subsidiary of BIT, LLC and did business for BIT LLC[,]" and that "BIT LLC justifiability relied on these representations in allowing the creation of [International]."[28]

The elements of fraud are (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury.[29]  Here, BIT LLC claims in the same breath that Beasley incorporated International without its "permission, authority, or agreement" and that BIT LLC did in fact allow Beasley to create International based on his allegedly fraudulent representations.  Apparently recognizing this "irreconcilable internal inconsistenc[y] on the face of its pleading,"[30] in its responsive briefing BIT LLC attempts to distinguish its "allowing the creation of [International]" from actually "agree[ing]" with its creation.[31]  BIT LLC contends that it did the former, but not the latter.  But this distinction does not appear to the Court to be a

---

[27] Doc. No. 145 at 11.

[28] *Id.*  It is not clear from its complaint and its responsive briefing whether BIT LLC is claiming to have allowed the creation of International or BIT Dallas, as it refers instead to the "locally incorporated entity."  *Id.*  If BIT LLC in fact means to refer to BIT Dallas, the Court's analysis would not change, nor would it change if BIT LLC means to refer to both entities.  But for the sake of simplicity, the Court will assume that the entity in question is International.  *See also* Doc. No. 158 at 6 ("Beasley initially created [International] (and BIT Dallas) without permission, authority, or agreement from BIT LLC. . . . BIT LLC relied on those [alleged] misrepresentations in allowing the creation of the locally incorporated entity.").

[29] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

[30] *Qwikcash*, 2020 WL 6781566, at *4.

[31] Doc. No. 158 at 6.

meaningful one.  And the confusion and inconsistency is only compounded by BIT LLC's claim that it believed that International had somehow—without its permission, authority, or agreement—been incorporated as its subsidiary.

Furthermore, BIT LLC claims that Beasley made the representations in question only after he had incorporated International and BIT Dallas.  But its claim is that BIT LLC "justifiability relied on these representations in allowing the creation of the locally incorporated entity."[32]  In other words, the action BIT LLC claims it took in reliance on Beasley's representations—allowing the creation of International or BIT Dallas—occurred before Beasley ever made those representations.[33]  Such irreconcilable internal inconsistences are the stuff that facially implausible claims are made on.[34]

While a Court may grant leave to amend a complaint it deems deficient "when justice so requires," it need not do so when amendment would be futile.[35]  Here, such amendment would indeed be futile.  For to address the irreconcilable inconsistences in its current counterclaim, BIT LLC would need to fundamentally alter its fraud claim.  BIT LLC has already twice amended its complaint, and the Court is not inclined to allow it to again amend its complaint now to effectively bring a new fraud claim against Beasley.

---

[32] Doc. No. 145 at 11.

[33] *Id.*

[34] *See, e.g., Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x, 295, 299 (5th Cir. 2012) (concluding that claim that plaintiff had been fired for complaining about her disability was implausible where plaintiff alleged she had complained about her disability only after she was fired).

[35] *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (quoting FED. R. CIV. P. 15(a)(2)).

Dismissal of the counterclaims would also be appropriate based on BIT LLC's failure to conform with Rule 9(b)'s heightened pleading standard. The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[36] Here, BIT LLC's fraud allegations—which are laid out in just over one page—do not do so. For example, BIT LLC does not identify when and where the statements were made.

Accordingly, the Court **GRANTS** Beasley's motion to dismiss and **DISMISSES WITH PREJUDICE** BIT LLC's fraud claim against Beasley.

### B. BIT LLC's Rule 12(c) Motion for Judgment on the Pleadings and Beasley's Motion to Strike

Having considered the motion to dismiss the counterclaims against Beasley, the Court now turns to BIT LLC's motion for judgment on the pleadings on Beasley's own counterclaims [Doc. No. 147] and Beasley's motion to strike BIT LLC's motion [Doc. No. 148]. Beasley argues that BIT LLC's motion should be struck as untimely because the pleadings were not closed at the time that the motion was filed. But this is simply not true. BIT LLC filed its motion on November 18, 2021, and the deadline for the parties to seek leave to amend their pleadings was November 15, 2021.[37] So, the Court **DENIES** Beasley's motion to strike.

The Court now turns to BIT LLC's Rule 12(c) motion for judgment on the pleadings itself. As noted above, "[t]he standard for dismissal under Rule 12(c) is the

---

[36] *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 207.

[37] Doc. No. 120 at 1.

same as that under Rule 12(b)(6)."[38]  BIT LLC argues that Beasley's civil RICO claims should be dismissed because the injuries he allegedly suffered were not proximately caused by the alleged RICO violations.  Civil RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."[39]  Read out of context, this provision might be understood to impose liability for any and every injury for which the initial malfeasance was *sine qua non*, no matter how far down the causal chain it is situated.[40]  But as Justice Holmes explained over a century ago, the "general tendency of the law" is to limit liability to injuries proximately caused by a defendant's conduct rather than impose it for every "remote consequence[]" of the defendant's actions.[41]  Indeed, "it has always been the practice of common-law courts (and probably of all courts, under all legal systems) to require as a condition of recovery, unless the legislature specifically

---

[38] *Hale*, 963 F.3d at 427.

[39] 18 U.S.C. § 1964(c).

[40] One may think of Edward Lorenz's proverbial Brazilian butterfly, whose single flap of wings sets in motion a series of meteorological events culminating in a tornado in Texas.  *See* Edward N. Lorenz, Predictability: Does the Flap of a Butterfly's Wings in Brazil Set Off a Tornado in Texas?, at the American Association for the Advancement of Science (Dec. 29, 1972), available at https://eapsweb.mit.edu/sites/default/files/Butterfly_1972.pdf.  Fluttering one's pinions may not be a predicate offense under RICO, but the illustration is nonetheless a useful one.

[41] *Southern Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918); *see also Waters v. Merchants' Louisville Ins. Co.*, 11 Pet. 213, 223, 9 L.Ed. 691 (1837) (Story, J.) ("It is a well-established principle of [the common] law, that in all cases of loss we are to attribute it to the proximate cause, and not to any remote cause; *causa proxima non remota spectator* . . . .").  After all, as Justice Scalia would later put it, "[life] is too short to pursue every human act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith."  *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring).

11

prescribes otherwise, that the injury have been proximately caused by the offending conduct."[42]   Against this common-law backdrop, the Supreme Court has long interpreted section 1964(c) to require a plaintiff to "show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well."[43]   And "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."[44]   "The compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts."[45]

Insofar as Beasley alleges that his injuries indirectly flowed from the counter-defendants' various wire fraud activities directed at third-parties—"swindling monies" from the United States government and from various corporations such as CitiGroup and Walt Disney, taking credit for the work of third-party volunteers and feigning ownership of business entities and social groups to earn money from job postings and T-shirt sales, and taking credit for the honest services of others by

---

[42] *Holmes,* 503 U.S. at 287 (Scalia, J., concurring).  The majority derived RICO's proximate cause requirement from the legislature's adoption of language from the Clayton and Sherman acts that the courts had—prior to RICO's enactment—interpreted to require proximate causation despite the absence of any express requirement.  *Id.* at 265–68.  *See also* ANTONIN SCALIA & BRYAN GARNER, READING LAW 322 (2012) (explaining the Prior-Construction Canon).  Furthermore, as Justice Scalia pointed out in his *Holmes* concurrence, all three statutes were adopted within this age-old legal context, which provided the common foundation for each of their proximate cause requirements. *Holmes,* 503 U.S. at 287 (Scalia, J., concurring).  *See also CSX Transp., Inc. v. McBride,* 564 U.S. 685, 708 (2011) (Roberts, C.J., dissenting) (collecting Supreme Court cases where the Court has applied "the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it").

[43] *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (cleaned up).

[44] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also id.* (concluding that competitive harm suffered by plaintiff because of its competitor's defrauding state government and resulting ability to offer lower prices was not proximately caused by the competitor's fraud and plaintiff could not maintain civil RICO action).

[45] *Hemi Grp.*, 559 U.S. at 13 (cleaned up).

12

claiming to have founded Blacks in Technology in order to gain influence over volunteers and sponsors—he cannot maintain his section 1964(c) claims against the counter-defendants.[46]   Although it is not at all clear that Beasley describes any actionable wrongdoing under RICO, it is perfectly clear that if any civil RICO claim exists, it belongs to those entities and individuals who were directly injured by the counter-defendants' actions.   Beasley was not among the allegedly swindled, so any harms he suffered were not proximately caused by the alleged swindling.   For this reason, Beasley's civil RICO claims must be dismissed for a lack of standing.

Relatedly, to establish Civil RICO standing, plaintiffs must also have suffered "concrete financial loss."[47]   "The plaintiff's injury must be conclusive and cannot be speculative."[48]   Here, Beasley has failed to allege that he suffered any concrete financial loss whatsoever.   Rather, he alleges that he suffered harm to "his personal reputation and in his business endeavors incorporating, founding, leading, growing, and administering [International]" because of the defendants' various RICO violations.[49]   These nebulous injuries are insufficient to sustain Beasley's civil RICO claims: "Injury . . . to an intangible property interest is not sufficient to confer RICO

---

[46] It matters not whether the injuries Beasley allegedly suffered were foreseeable consequences of the counter-defendants' actions.   While foreseeability is one of the "many shapes proximate cause took at common law," "directness of relationship" is another.   *Hemi Grp.*, 559 U.S. at 12 (cleaned up). And in the context of RICO, the focus is on the latter.   *Id.*

[47] *In re Taxable Mun. Bond Secs. Lit.*, 51 F.3d 518, 523 (5th Cir. 1995) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).

[48] *Gil Ramirez Grp., L.L.C. v. Hous. Ind. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015) (cleaned up).

[49] Doc. No. 62 at 38, 39, 40, and 41.   It is not clear that these claims—if they could be sustained—would belong to Beasley by reason of injuries to his "business endeavors" with International and would not simply belong to International.   *See Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016).

13

standing."[50]   This is an independent reason for dismissing Beasley's RICO claims related to misconduct directed at third parties, as well as Beasley's RICO claims related to the alleged defamation directed at him.

Apparently recognizing the inadequacy of the injuries he alleged in his complaint, Beasley has attempted to shore them up in his responsive briefing (as well as in his proposed second amended complaint, which he attempted to file after the period for motions to amend the pleadings had closed, and the Court denied him leave to file), claiming that he was injured by the defendants' failure to pay him $55 per hour for his services as executive director of International as required by their engagement agreement.[51]   This agreement also states that "Peter Beasley understands and accepts that no funds are currently available to pay Peter Beasley, and he agrees that Blacks in Technology may pay him for his accrued time under reasonable terms favorable to Blacks in Technology."[52]   So, it is not clear what Beasley was actually owed under the terms of this agreement.

But even if the Court were to conclude that Beasley's unpaid wages represent a concrete financial loss proximately caused by the alleged civil RICO violations,[53] it would nonetheless still dismiss Beasley's related civil RICO claims.   For as the Fifth Circuit has explained of the mail fraud statute, it "does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business

---

[50] *Gil Ramirez Grp., L.L.C.*, 786 F.3d at 409 (cleaned up).

[51] Doc. No. 154 at 2; Doc. No. 157 at 43.

[52] Doc. No. 157 at 43.

[53] *But see Gil Ramirez Grp., L.L.C.*, 786 F.3d at 409 ("Injury to mere expectancy interest . . . is not sufficient to confer RICO standing." (cleaned up)).

contract. Its condemnation of a 'scheme or artifice to defraud' implicates only plans calculated to deceive."[54]   The same is true of the wire fraud statute upon which Beasley predicates his RICO claims.[55]   But Beasley does not allege that the defendants engaged in any fraudulent behavior in contracting with him and then failing to pay his wages. All that Beasley appears to describe—if anything—is a "garden variety" breach of contract claim, not "the deceit crucial to be the stuff of [wire fraud and] a civil RICO claim."[56]

Finally, Beasley claims that "[t]he purpose of the [alleged RICO] scheme was to take money from BIT International . . . which Beasley and several other volunteers created."[57]   Insofar as Beasley attempts to vindicate the injuries BIT International allegedly suffered by the actions of this civil conspiracy, Beasley lacks standing to do so. Claims arising from injuries to a corporation belong to the corporation itself, and third parties cannot seek redress themselves.[58]   So, because amendment would be futile, the Court **DISMISSES WITH PREJUDICE** Beasley's civil RICO claims.

---

[54] *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980).

[55] *See, e.g.*, *Chris Albritton Constr. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 532 (5th Cir. 2002) ("Both mail fraud and wire fraud require a scheme or artifice *to defraud* which includes false or fraudulent pretenses, representations or promises, requiring proof of intent to defraud.").

[56] *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 405 (E.D. Pa. 2013). "Although RICO is a remedial statute and it is designed to have a broad sweep, it 'does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'" *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) (*en banc*) (quoting *Hunt v. Crumboch*, 325 U.S. 821, 826 (1945)). The same is true of breaches of contract. Were it otherwise, civil RICO "would swallow state civil and criminal law whole," as "[v]irtually every litigant would have the incentive to file their breach of contract and tort claims under [RICO], as treble damages and attorney's fees would be in sight." *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999). As the *en banc* Sixth Circuit explained, "[c]ongress might have the authority to enact such a law, but we are certain that if it intended to do so, it would have provided more explicit guidance." *Jackson*, 731 F.3d at 568.

[57] Doc. No. 62 at 35.

[58] *See Linegar*, 495 S.W.3d at 279.

15

The counter-counter-defendants argue that if, as it has done, the Court dismisses Beasley's civil RICO claims, it should also dismiss Beasley's state law claims for civil conspiracy and defamation based on a lack of jurisdiction. Beasley expresses no disagreement with this argument. But even if Beasley's state law claims are permissible counterclaims over which the Court could exercise supplemental jurisdiction—which again, Beasley does not argue—the Court would decline to do so based on the discretion granted to it by congress in 28 U.S.C. Section 1367(c).

In determining whether to exercise supplemental jurisdiction, courts in the Fifth Circuit

> balance the four [Section] 1367(c) factors—(1) whether the state law claim raises novel or complex issues; (2) whether the state law claim predominates over federal law claims; (3) whether the federal law claims have been dismissed; and (4) whether there are exceptional circumstances for declining jurisdiction—alongside the four common law factors of judicial economy, convenience, fairness, and [federal–state] comity.[59]

The Court considers these four statutory factors in the order listed before considering the common law factors. First, while Beasley's "state law claims may not raise particularly novel or complex issues under Texas law . . . the state claims are not the simplest or most routine issues of Texas . . . law."[60] So, this factor weighs slightly against supplemental jurisdiction.

Second, while Beasley's state law claims and the factual and legal issues involved do not in and of themselves necessarily predominate over the claims over

---

[59] *Garcia v. City of McAllen*, 853 F. App'x 918, 920 (5th Cir. 2021) (cleaned up).

[60] *Pennie v. Obama*, 255 F. Supp. 3d 648, 673 (N.D. Tex. 2017) (Lindsay, J.).

which the Court has original jurisdiction, his vexatious litigation tactics would cause—and indeed, already have caused—the litigation of his claims to predominate over the litigation of the claims over which the Court has original jurisdiction.  So, this factor weighs against supplemental jurisdiction.

Third, while Beasley's federal claims have been dismissed, claims of the original parties remain before the Court.  While Beasley's state claims bear some relationship to the claims that remain before the Court, Beasley's status as a counter-counter-plaintiff who was not an original party to this suit lessens the degree to which this factor weighs in favor of supplemental jurisdiction.  So, this factor weighs only slightly in favor of supplemental jurisdiction.

Fourth, Beasley's status as a state-court-declared vexatious litigant operating as a counter-counter-plaintiff in a lawsuit to which he was not an original party presents an "exceptional circumstance" with a "compelling reasons for declining jurisdiction."[61]  Allowing Beasley to vexatiously pursue his claims—over which the Court ordinarily would not have jurisdiction—as part of this litigation would seriously undermine the interest that this suit's original parties, the Court itself, and the sovereign people of the United States of America have in an efficient and effective litigation of the original claims.  And, as further discussed below, it would significantly undermine the unique and important role Texas courts play in ensuring that the laws of their state are not weaponized as instruments of abuse by vexatious litigants.  This factor weighs strongly against supplemental jurisdiction.

---

[61] 28 U.S.C. § 1367(c)(4).

Having considered the statutory factors, the Court turns to the common law factors of "judicial economy, convenience, and fairness."[62] First, although a number of Beasley's numerous filings have required the Court's attention, the Court has not yet expended meaningful time or resources substantively considering Beasley's state law claims, so the Court has no "substantial" or "intimate[]" familiarity with them.[63] And, while the Court has issued scheduling orders and the parties have engaged in discovery,[64] all claims that were both by and against this suit's original parties remain before the Court, so those efforts that have been expended will not be wasted if the Court declines to exercise jurisdiction over the counter-counter-plaintiff's claims. Further, "nothing in the record suggests it would be less convenient or unfair to litigate the case in state court."[65] So, taken as a whole, these factors weigh against supplemental jurisdiction.

Finally, the Court considers the last common law factor, federal-state comity.[66] "Under chapter 11 [of the Texas civil practice and remedies code], a [Texas] trial court may place limitations on the litigation activities of a person determined by the court

---

[62] *Garcia,* 853 F. App'x at 920.

[63] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159–60 (5th Cir. 2011). This consideration distinguishes this case from cases like *Garcia v. City of McAllen*, where "the district court's substantial familiarity with the merits of the case mean that the judicial economy, convenience, and fairness benefits of continued jurisdiction outweigh the interest in sending the isolated [state law] claim back to state court." 853 F. App'x at 920 (cleaned up).

[64] *Garcia*, 835 F. App'x at 920.

[65] *Pennie*, 255 F. Supp. 3d at 673. While Beasley's designation as a vexatious litigant may make it more difficult for him to litigate his claims in state court if the claims are frivolous or if he otherwise wishes to litigate vexatiously, the "inconvenience" this may pose to Beasley is not among the Court's concerns. And if Beasley wishes to litigate his claims in good faith, his apparently extensive experience as a *pro se* litigant in the Texas courts will serve him well.

[66] *Garcia*, 853 F. App'x at 920.

18

to be a 'vexatious litigant.'"[67]  In authorizing Texas courts to do so, "the [Texas] legislature struck a balance between Texans' right of access to their courts and the public interest in protecting defendants from those who abuse [Texas's] civil justice system."[68]  After all, "vexatious litigants tie up a great deal of a court's time, denying that time to litigants with substantial cases."[69]  Furthermore, "the state has an interest in protecting defendants from harassment by frivolous litigation, just as it has an interest in protecting people from stalking."[70]

It is this latter concern that leads the Court to the conclusion that federal–state comity weighs strongly against supplemental jurisdiction.  In circumstances

---

[67] *Leonard v. Abbott*, 171 S.W.3d 451, 455 (Tex. App.—Austin 2005, no pet.).  A plaintiff must have a substantial track record before being designated as a vexatious litigant:

> The court may determine that the plaintiff is a vexatious litigant if the defendant demonstrates that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained in propria persona at least five litigations . . . that have been finally determined adversely to the plaintiff.  If the court determines, based on evidence presented at a hearing, that the defendant is a vexatious litigant, it must order the plaintiff to furnish security for the benefit of the moving defendant in an amount related to the costs and attorneys' fees the defendant anticipates incurring in defending the litigation.  If the plaintiff fails to furnish the court-ordered security by the time set in the order, the court must dismiss the suit. The court may also, on its own motion or the motion of any party, enter a prefiling order prohibiting a plaintiff from filing, pro se, a new lawsuit in state court without leave of the local administrative judge.

*Id.* at 455–56 (cleaned up).

After holding a hearing as required and determining that the requisite statutory elements were satisfied, a Texas district court declared that Beasley is a vexatious litigant on December 11, 2018.  Doc. No. 147-1 at 1.  The court's order required Beasley to post bond in the amount of $422,064.00 before pursuing his claims in that specific lawsuit, and further prohibited Beasley "from filing any new lawsuits *pro se* in any court in the State of Texas until [he] receives permission from the local administrative judge."  *Id.* at 1–2.

[68] *Leonard*, 171 S.W.3d at 455.

[69] *Wolfe v. George*, 486 F.3d 1120, 1126 (9th Cir. 2007).

[70] *Id.*

such as these, providing a vexatious litigant a federal forum to freely litigate his Texas-law claims—claims over which the Court ordinarily would lack jurisdiction—would fundamentally frustrate the purpose of the Texas district court's order declaring Beasley a vexatious litigant and significantly undermine Texas's interest in ensuring that its laws are not misused as tools of harassment in frivolous litigation.[71]

On balance, the relevant factors weigh strongly against the Court exercising supplemental jurisdiction over Beasley's claims. So, even if Beasley's state law claims are permissible counterclaims over which the Court could exercise supplemental jurisdiction—which Beasley does not argue—the Court would decline to do so. Accordingly, the Court **GRANTS** BIT LLC's motion for judgment on the pleadings **DISMISSES WITHOUT PREJUDICE** Beasley's state law claims**.**

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** BIT LLC's motion for judgment on the pleadings, **DISMISSES WITH PREJUDICE** Beasley's civil RICO claims, and **DISMISSES WITHOUT PREJUDICE** Beasley's state law claims. The Court **DENIES** Beasley's motion to strike. And the Court **GRANTS** Beasley's motion to

---

[71] *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (declining to exercise supplemental jurisdiction "as a matter of comity" where allowing a plaintiff who had filed over one hundred disability discrimination suits to bring such a claim in "federal court as an end-around to California's [heightened] pleading requirements [for such claims]."). In *Schutza*, the court recognized that "[t]he purpose of these heightened pleading requirements [was] to deter baseless claims and vexatious litigation." *Id.* So "in deference to California's substantial interest in discouraging unverified disability discrimination claims," the Court declined to exercise supplemental jurisdiction over the plaintiff's claims. *Id.*

dismiss and **DISMISSES WITH PREJUDICE** BIT LLC's counterclaims against Beasley.

      **IT IS SO ORDERED** this 26th day of May, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE