UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLACKS IN TECHNOLOGY INTERNATIONAL, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:20-cv-3008-x |
| GREGORY GREENLEE, DENNIS SCHULTZ, AND BLACKS IN TECHNOLOGY, LLC, | § § § § | |
| *Defendants*. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a motion for judgment on the pleadings from Blacks in Technology International ("BIT International"), Blacks United in Leading Technology International ("BUILT"), and Blacks in Technology, Texas ("BIT Texas"). [Doc. 241]. Also before the Court is a motion for partial summary judgment from Blacks in Technology, LLC ("BIT LLC") and Gregory Greenlee. [Doc. 242]. After careful consideration, and for the reasons below, the Court **GRANTS** both motions.

## I.  Background

The Court has previously recounted this case's winding journey through procedural purgatory, the twists and turns of its pleadings pilgrimage, and the factual background of the parties' disputes and the roles of the various participants.[1] The parties have alleged, argued, and amended a litany of claims and counterclaims,

---

[1] Docs. 218 at 2–5; 227 at 2–3.

which the Court has noted "are many and meandering."[2]  After almost three years, the surviving claims and parties leading into this order are as follows:

First, BIT LLC maintains two claims against BIT International, BUILT, and BIT Texas for (1) trademark infringement and (2) unfair competition.[3]

Second, BIT International maintains five claims against BIT LLC, Gregory Greenlee, and Dennis Schultz for (1) conversion and money had and received (against BIT LLC and Greenlee); (2) tortious interference with contract (against Greenlee and Schultz); (3) piercing the corporate veil (against BIT LLC and Greenlee); (4) breach of contract (against Schultz); and (5) fraudulent inducement (against Greenlee).[4]

And third, BUILT and BIT Texas maintain two claims against BIT LLC and Greenlee: (1) cancellation as to one trademark, and (2) cancellation as to another trademark.[5]

The two motions before the Court concern the first two groups of claims.  BIT International, BUILT, and BIT Texas move for judgment on the pleadings as to BIT LLC's two claims, and BIT LLC and Greenlee move for summary judgment on all of BIT International's claims against them.[6]

---

[2] Doc. 218 at 2.

[3] Doc. 145 at 7–9; *see* Doc. 227 at 1–2 (dismissing other claims).  BIT LLC requests preliminary and permanent injunctions against BIT International, BUILT, and BIT Texas as to these claims.  Doc. 145 at 9–10.

[4] Doc. 46 at 14–17.

[5] Doc. 232 at 14.  These parties request a declaratory judgment that they cannot infringe on these trademarks because the "marks are invalid and descriptive."  *Id.* at 15.

[6] The only claim from these parties' pleadings excluded by these motions is BIT International's fourth claim, breach of contract, against Schultz.  Schultz has not moved for summary judgment on this claim and is not part of BIT LLC and Greenlee's motion for partial summary judgment.

The Court will address each motion in turn.

## II. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings, filed under Federal Rule of Civil Procedure 12(c), "is subject to the same standards as a motion to dismiss under Rule 12(b)(6)."[7]  Accordingly, to survive, BIT LLC's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"[8] and the Court will "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to" BIT LLC.[9]

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[10]  BIT International, BUILT, and BIT Texas argue that BIT LLC lacks standing for its trademark-infringement and unfair-competition claims.  These two claims arise under different statutes, so the Court will address each claim in turn.

Under 15 U.S.C. Section 1114, "[a]ny person who shall, without the consent of the registrant," use or reproduce a registered mark "shall be liable in a civil action *by the registrant*."[11]  The statute empowers only the mark's registrant to sue, so, "[t]o

---

[7] *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209–10 (5th Cir. 2010).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[10] FED. R. CIV. PROC. 12(h)(3).

[11] 15 U.S.C. § 1114(1) (emphasis added).

3

succeed on a trademark infringement claim, a plaintiff first must show ownership of a legally protectable mark."[12]

The first mark at issue consists of the words "BLACKS IN TECHNOLOGY" and is registered at USPTO Registration Number 4758593 (the "Mark").[13]  BIT LLC attached a copy of the Mark's registration to its pleadings, which lists the "Current Owner(s) Information" as "Greenlee, Greg DBA, AKA, Formerly: DBA Blacks in Technology."[14]  For the owner's "Legal Entity Type," the registration states: "INDIVIDUAL."[15]  BIT LLC argues that this description indicates that the true registrant is BIT LLC, but it indicates precisely the opposite.[16]  Greenlee, not BIT LLC, is an individual, and the fact that he may have formerly done business as "Blacks in Technology" hardly makes BIT LLC, and not Greenlee himself, the Mark's registrant.  BIT LLC, therefore, is not the owner of the Mark by registration.[17]

But registering is only "prima facie evidence of the registrant's ownership of the mark" because "ownership is established by use, not by registration."[18]  "[T]he question of use adequate to establish appropriation" must "be decided on the facts of

---

[12] *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.).

[13] Doc. 49 at 16.

[14] *Id.*

[15] *Id.*

[16] Doc. 250 at 3.

[17] Though it does not allege this, BIT LLC also has failed to show it owns the Mark as an assignee because it does not point to any record of assignment "by instruments in writing duly executed."  15 U.S.C. § 1060(a)(3); *Multimin USA, Inc. v. Walco Int'l, Inc.*, No. 4:06-CV-260-A, 2007 WL 1686511, at *3 (N.D. Tex. June 8, 2007) (McBryde, J.) ("An owner or registrant who assigns its trademark also assigns the right to sue for infringement of that mark.").

[18] *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 186 (5th Cir. 2018) (cleaned up).

each case."[19]  For example, "use [of a mark] in trade may sustain trademark rights if followed by continuous commercial utilization."[20]  The type of use also matters.  For example, BIT LLC may "establish[] ownership by demonstrating that it uses [the Mark] as a source identifier"[21] because a central purpose of trademarks is "indicat[ing] the source of the goods."[22]

BIT LLC's pleadings fail to establish ownership through use.  The conclusory assertion that "[s]ince 2014 . . . BIT[] LLC has continuously used the Mark[] in commerce throughout the United States" is unaccompanied by specific factual support.[23]  This statement merely "offers labels and conclusions" more akin to "a formulaic recitation of" the requirements than to "a claim to relief that is plausible on its face."[24]  The Court must decide ownership-by-use on the facts, and BIT LLC has offered none.

BIT LLC is not the owner of the Mark as a registrant, licensee, or assignee, and its pleadings fail to plausibly allege ownership through use.  Accordingly, BIT LLC cannot state a claim for trademark infringement concerning the Mark.[25]  Thus, the Court **DISMISSES WITHOUT PREJUDICE** this claim.

---

[19] *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265–66 (5th Cir. 1975).

[20] *Id.* at 1265.

[21] *Viacom*, 891 F.3d at 185.

[22] 15 U.S.C. § 1127.

[23] Doc. 145 at 4.  The bare assertion that BIT LLC "has prominently used, advertised[,] and promoted its goods and services bearing the Mark[] in various media" is similarly inadequate.  *Id.*

[24] *Iqbal*, 556 U.S. at 678 (cleaned up).

[25] The Court notes that the motion for judgment on the pleadings depicts this defect as a standing problem, but BIT LLC's failure to state a claim warrants dismissal regardless of how the motion characterized it.

BIT LLC's remaining claim—unfair competition under 15 U.S.C. Section 1125(a)(1)—refers to two alleged trademarks: the Mark and a "Blacks in Technology" logo with USPTO Registration Number 90182389 (the "Logo").[26]

Section 1125(a)(1) "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising."[27]  This broad statutory cause of action makes no mention of the owner or registrant, and "[r]ead literally, [it] might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III" to establish standing.[28]  But the Supreme Court has dismissed the notion that "Congress meant to allow all factually injured plaintiffs to recover" and instead applied "two relevant background principles" to determine "the relevant limits on who may sue" under Section 1125(a)(1): "the zone-of-interests test and the proximate-cause requirement."[29]

In this context, the zone-of-interests test requires plaintiffs to "allege an injury to a commercial interest in reputation or sales."[30]  BIT LLC has done so, albeit in a conclusory fashion.  But regardless of whether BIT LLC has satisfied this element, the Court finds that it failed to properly allege proximate causation, so its claim cannot succeed.

---

[26] Doc. 145 at 4, 8–9.

[27] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting 15 U.S.C. § 1125(a)(1)).

[28] *Id.*

[29] *Id.* at 129, 134 (cleaned up).

[30] *Id.* at 132.

To satisfy the proximate-cause element, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."[31] The "paradigmatic direct injury" under Section 1125(a)(1) is "diversion of sales to a direct competitor"; other recognized injuries may include "harm[ing] a plaintiff's reputation by casting aspersions on its business," "denigrat[ing] a plaintiff's product by name," "damag[ing] the product's reputation by, for example, equating it with an inferior product," or "seek[ing] to promote [the defendant's] own interests by telling a known falsehood to or about the plaintiff or his product."[32]

BIT LLC's pleadings fail to allege proximate cause between the violation of Section 1125(a)(1) and BIT LLC's injuries. BIT LLC offers a parade of conclusory assertions: BIT International, BUILT, and BIT Texas "have used and . . . continue to use [the Mark and the Logo] to advertise, promote[,] and fundraise"; their use "is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, sponsorship, approval, or affiliation of BIT[] LLC's business, products, or services"; "[c]onsumers are likely to believe, erroneously, that BIT[] LLC's goods or services are affiliated or connected with" BIT International, BUILT, and BIT Texas.[33] BIT LLC then includes what appears to be a screenshot from a nondescript social media chat forum in which five participants discuss the similarity between BUILT's logo and BIT

---

[31] *Id.* at 133.

[32] *Id.* at 137–38 (cleaned up) (emphasis removed).

[33] Doc. 145 at 5.

LLC's logo.[34]  Finally, BIT LLC states that the alleged "infringement will also lessen the ability of [the Mark and the Logo] to identify and distinguish BIT[] LLC's goods and services, thereby causing harm to BIT[] LLC."[35]

This isn't enough.  The Supreme Court has made clear that "[p]roximate causation . . . is an element of the cause of action under [Section 1125(a)(1)]," so "it must be adequately alleged at the pleading stage in order for the case to proceed."[36] BIT LLC has failed to allege any economic or reputational injury "flowing directly from the deception wrought by" the advertising of BIT International or BIT Texas.[37] Its complaint makes no mention of any specific advertising by these two parties whatsoever.  And BIT LLC's screenshot demonstrating the apparent confusion of five anonymous users of an unidentified social media chat forum[38]—all of whom were able to distinguish the two logos, and none of whom referred to anything indicating reputational or economic harm—is insufficient to plausibly allege that BUILT proximately caused any injury to BIT LLC via infringement.

BIT LLC's complaint fails to plead the essential proximate-cause element of its Section 1125(a)(1) claim.  BIT LLC alludes to no instances of the infringement diverting sales to a competitor, harming its reputation, casting aspersions on its

---

[34] *Id.* at 6 (documenting the following comments: "Wait . . . it's not you . . . the logo is way toooo similar"; "Yep, definitely took a lot of the BiT theme"; "mutters angrily"; and "[W]ow, I saw that and thought it was [s]pons[o]red by BIT, then I started researching and found out it wasn't").

[35] *Id.*

[36] *Lexmark*, 572 U.S. at 134 n.6 ("If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed[.]").

[37] *Id.* at 133.

[38] The users' names are "nana," "gt50," "Taylor R," "treed," and "hamckelvey1965."  Doc. 145 at 6 (purple devil emoji omitted).

business, denigrating its product, damaging its product's reputation, or spreading any falsehood about BIT LLC or its product or services. And BIT LLC's inadequate assertions cannot overcome this deficiency to establish proximate cause. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** this claim as to both the Mark and the Logo.

Because BIT LLC fails to state a plausible claim for relief as to either of its claims, the Court **GRANTS** the motion for judgment on the pleadings, **DENIES** BIT LLC's request for injunctive relief on these claims, and **DISMISSES WITHOUT PREJUDICE** BIT LLC's second amended counterclaim against BIT International, BUILT, and BIT Texas. Within 28 days, BIT LLC may amend its counterclaim to address the defects addressed in this order.

### III.  Motion for Partial Summary Judgment

BIT LLC and Greenlee seek summary judgment on four of BIT International's claims. One of these claims—conversion and money had and received, which BIT International's complaint asserts as a single claim—is against both BIT LLC and Greenlee. The Court analyzes these two causes of action separately. The second claim—piercing the corporate veil—is not a cause of action, but rather a theory of recovery, as discussed below. And BIT LLC brings its other two claims—tortious interference with contract and fraudulent inducement—against Greenlee alone.[39]

---

[39] BIT LLC brings its claim for tortious interference with contract against Schultz as well, but Schultz is not a party to this motion.

### a.  Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]  "[F]actual [disputes] are considered in the light most favorable to the nonmovant," and "[t]he substantive law will identify which facts are material."[41] The moving party must "demonstrate the absence" of genuine factual disputes "but need not *negate* the elements of the nonmovant's case."[42]

If the moving party satisfies its burden, the nonmoving party "must set forth specific facts showing that there is a genuine [dispute] for trial."[43]  The nonmoving party cannot satisfy its burden with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[44]

### b.  Conversion

Texas's substantive law applies.[45]  In Texas, "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion."[46]  BIT International makes clear that it "is not asserting conversion of

---

[40] FED. R. CIV. PROC. 56(a).

[41] *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996) (cleaned up).

[42] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

[43] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968) (cleaned up).

[44] *Little*, 37 F.3d at 1075 (cleaned up).

[45] *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020).

[46] *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

chattels, but conversion of funds."[47]  Under Texas law, a party can sue for conversion of money "only when it is in the form of specific chattel, such as old coins,"[48] or "where 'money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'"[49]  "[A] cause of action for conversion fails when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute."[50]  In short, a conversion claim for money can survive only "if the money can be identified as a specific chattel," and will fail "[w]hen an indebtedness can be discharged by payment of money generally."[51]

BIT International's claim for conversion of money falls woefully short of the exacting Texas standard.  The money came in the form of online donations.[52]  Both sides agree that donors gave the money to BIT Foundation (a non-party owned by Greenlee).  But BIT International asserts ownership of the donations BIT Foundation received during a period in 2020 based on an "initial plan . . . for BIT International

---

[47] Doc. 251 at 7; *see* Doc. 46 at 14.

[48] *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996).

[49] *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)).

[50] *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 708 (E.D. Tex. 2006).

[51] *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App.—Dallas 1988, writ denied), *superseded by statute on other grounds as stated by Employers Ins. Of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex. App.—Dallas 1990, writ denied).

[52] Both sides cite only to Greenlee's declaration in their briefing on BIT International's conversion claim, so the Court looks to this evidence to determine the nature of the funds at issue.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir 1998) (stating that the Federal Rules of Civil Procedure "do[] not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment" (cleaned up)).

to replace BIT Foundation" that never came to fruition.[53]  While that plan was in development, "donations made through the website were sent directly to an account owned by BIT International."[54]  Then, once the relationship between Greenlee and Peter Beasley, owner of BIT International, imploded, "BIT Foundation removed, briefly reinstated, and then permanently ended the ability to send donations" to BIT International through the website.[55]  Once Greenlee and "other BIT leaders" officially severed ties with Beasley, "the plan to transfer funds to BIT International was cancelled, and BIT Foundation retained the funds instead."[56]

BIT International offers no evidence to show that the money it seeks was a specific chattel.  It does not even state the amount of money it claims BIT LLC and Greenlee converted through BIT Foundation or define the exact time period during which it claims entitlement to all donations.  And it suggests no reason to think that BIT Foundation was segregating this money and holding it for safekeeping until BIT International could claim it.  On the contrary, Greenlee stated that, "[a]t the time of donation, the donations were owned by BIT Foundation, which held the funds in its own bank account and utilized them in accordance with its charitable purpose."[57]  BIT International points only to Greenlee's statement that "[t]he initial plan . . . included transferring funds donated to BIT Foundation to BIT International," but this plan

---

[53] Doc. 247-1 at 3.

[54] *Id.*

[55] *Id.* at 4.

[56] *Id.*

[57] *Id.*

12

clearly never evolved past the "initial" stages due to the parties' failed business relationship.[58] And BIT International received donations for a brief period before the plan collapsed, but BIT International does not show that other funds retained by BIT Foundation before, during, or after that period were ever segregated and held in safekeeping for BIT International to someday acquire.

BIT International's claim for conversion of money cannot succeed because it does not fit the narrow Texas exception to the general rule barring this type of claim. Instead of addressing this defect, BIT International pivots, arguing for the first time in its response brief that its conversion claim is based on a statute rather than the common law. BIT International's complaint does not mention a statutory conversion claim, but even assuming BIT International could raise one in its response brief, it also fails. Texas Business and Commerce Code Section 3.420 is titled "Conversion of Instrument" and deals with conversion claims for "instruments."[59] An "instrument" must be "an unconditional promise or order to pay a fixed amount of money."[60] And both a "promise" and an "order" require a signed, written document directing the payment of money.[61] There is no evidence here of any signed, written document directing the payment of a fixed amount of money from BIT LLC or Greenlee to BIT International, or even from BIT Foundation to BIT International. And the parties aborted their business relationship before any tentative agreement to transfer the

---

[58] Doc. 251 at 7 (quoting Doc. 247-1 at 4).

[59] TEX. BUS. & COM. CODE § 3.420(a).

[60] *Id.* § 3.104(a)–(b) (listing other requirements for "instrument[s]").

[61] *Id.* § 3.103(8), (12).

funds at issue became "unconditional."  BIT LLC points to no evidence indicating otherwise.  Thus, BIT International's statutory conversion claim also cannot succeed.

BIT International's conversion claim fails as a matter of law, either as a common-law or statutory claim, so there is no genuine dispute of material fact.  Accordingly, the Court **GRANTS** summary judgment on this claim.

### c.  Money Had and Received

In Texas, a claim for money had and received requires proof that a defendant "holds money which in equity and good conscience belongs to" the plaintiff.[62]  This cause of action "is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another."[63]  "In short, it is an equitable doctrine applied to prevent unjust enrichment."[64]

As an initial matter, BIT International must show that BIT LLC and Greenlee currently hold the donations it seeks.  BIT International does not present evidence showing that BIT LLC holds any donations made to BIT Foundation, so this claim fails as to BIT LLC.[65]  It asserts an agency theory as to both BIT LLC and Greenlee

---

[62] *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951) (cleaned up).

[63] *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (cleaned up).

[64] *Id.* (cleaned up).

[65] BIT International's complaint alleges that "Greenlee redirected the non-profit donations link away from BIT International to a link controlled by BIT LLC," but it offers no summary-judgment evidence to back this assertion.  Doc. 46 at 6–8; *see Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.").  Though Beasley's declaration says that Greenlee "removed all the funding links from the shared website," it does not say he redirected donations to BIT LLC.  Doc. 252 at 10.  BIT International's unsupported allegations alone cannot create a fact dispute.  Even if they could, BIT LLC and Greenlee offer actual summary-judgment evidence to counter it.  *See* Doc. 247-5 at 4 (Greenlee's deposition testimony: "I've always made a

that is too vague to show that either party holds the funds at issue.[66]  But one statement from Beasley's declaration arguably shows that Greenlee holds some of the funds: "Mr. Greenlee had been receiving nonprofit donations for years[] and keeping the money for himself."[67]  This statement lacks detail as to whether the donations Greenlee allegedly kept came through BIT Foundation, whether Greenlee had permission to keep these funds, and whether the funds Greenlee allegedly kept came to BIT Foundation during the time period BIT International claims it should have been receiving the donations.

But even assuming that BIT International established that Greenlee holds the money at issue, it nevertheless fails to establish that it is entitled to that money in equity and good conscience.  Evidence that Greenlee kept donations for himself, even if doing so was wrongful, is insufficient because BIT International isn't accusing Greenlee of wrongdoing per se; it's alleging that it is entitled to possess the donations Greenlee allegedly kept.  The parties apparently agreed to divert donations to BIT International for a time, but donations were redirected to BIT Foundation once the

---

distinction between [BIT LLC and BIT Foundation] since the beginning and inception of both entities . . . .  People knew where they were donating to; and when they were donating to [BIT] Foundation they—it was made clear that they were donating to the nonprofit arm.").

[66] BIT International argues that BIT LLC and Greenlee are "liable under agency principles" due to their "relationships with BIT Foundation."  Doc. 251 at 6.  "Agency is not presumed; a party alleging the existence of an agency relationship bears the burden of proving it."  *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017).  By failing to elaborate or point to evidence showing agency, BIT International asks the Court to presume an agency relationship, which Texas law prohibits.  And Greenlee's mere status as a corporate officer of BIT Foundation is insufficient to support BIT International's money-had-and-received claim.  *See Piper Jaffray & Co. v. Omni Surgical, LLC*, No. A-14-CV-814-LY, 2015 WL 3687946, at *9–10 (W.D. Tex. June 12, 2015) (finding that money-had-and-received claim against a corporate officer to obtain payment for services rendered to his corporation, with no evidence that the claimant conferred a benefit on the corporate officer himself, was "attempting to stretch the money had and received claim too far").

[67] Doc. 252 at 9.

business relationship deteriorated.  BIT International does not point to a specific contract or conversation between the parties that promised BIT International access to the donations for any set period of time.[68]  And in addition to its failure to point to evidence showing its entitlement to any donations, BIT International also fails to explain why equity or good conscience dictate that the funds should belong to it.

Instead, BIT International asserts that "donations that were meant for BIT [International] were sent to BIT Foundation" but "BIT LLC, BIT Foundation[,] and Greenlee all used those funds for their own purposes."[69]  BIT International provides no citation for this statement, and it never shows how BIT LLC or Greenlee used or possessed the funds in lieu of the actual recipient, BIT Foundation.  The only evidence BIT International cites is a single sentence from Greenlee's declaration: "The initial plan . . . was for BIT International to replace BIT Foundation, including transferring funds donated to BIT Foundation to BIT International."[70]  But the "initial plan" was only that—initial.[71]  Greenlee's declaration goes on to describe the changed circumstances that led to BIT International's ouster and the redirection of donations

---

[68] BIT International's live complaint purports to quote an email from Greenlee that alludes to an agreement to pay about $10,000 from BIT Foundation to BIT International.  Doc. 46 at 10.  But "pleadings are not summary judgment evidence," and BIT International fails to point to that email in the summary-judgment record.  *Wallace*, 80 F.3d at 1047.

[69] Doc. 251 at 7.

[70] *Id.* (quoting Doc. 247-1 at 3).

[71] Greenlee affirmed in his deposition that this plan never became reality and that the parties never signed agreements, stating that, "[i]nitially, the plan was if everything worked out, agreements were signed, then . . . the plan would be to have [BIT] International become the nonprofit of Blacks in Technology brand."  Doc. 247-5 at 4.

to BIT Foundation.[72]  Greenlee acknowledged the temporary allocation of donations to BIT International, but with no evidence detailing how this arrangement terminated, the Court cannot determine whether equity dictates that all or some of the donations retained by BIT Foundation actually belong to BIT International.[73]  In short, BIT International gives no reason why it, and not BIT Foundation, should possess these funds in equity and good conscience, so it cannot satisfy the second element of its claim.

BIT International cannot establish its claim for money had and received as a matter of law.  Thus, the Court **GRANTS** summary judgment on this claim.

---

[72] Doc. 247-1 at 3–4 ("After conflict arose, BIT Foundation removed, briefly reinstated, and then permanently ended the ability to send donations through the BIT-branded website to the account controlled by BIT International.").

[73] The Court notes that Beasley's declaration includes the following statement, which BIT International did not cite in its response: "Greenlee reneged on returning funds that [BIT] Foundation was holding for [BIT] International."  Doc. 252 at 12.  This sentence is far too vague to save BIT International's money-had-and-received claim.  Why was it Greenlee's duty to return the funds instead of BIT Foundation's?  What agreement did he "renege[]" on?  Which funds—the donations at issue, or something else?  If the sentence refers to the donations, the word "return[]" is inappropriate since BIT International claims it never initially possessed the funds.  At the summary-judgment stage, the Court may not "assum[e] that general averments embrace the specific facts needed to sustain the complaint" because Rule 56 requires the nonmoving party to "set forth *specific facts* showing that there is a genuine [dispute] for trial."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (cleaned up) (emphasis added).  "The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  *Id.*  The Supreme Court has made clear that conclusory summary-judgment evidence "converts the operation of Rule 56 to a circular promenade" in which a plaintiff simply bolsters general claims in a complaint with general claims in an affidavit or declaration.  *Id.* at 889.  Beasley's assertion lacks critical detail, and the Court cannot furnish the assumptions it needs; this statement alone cannot save this claim.

### d.  Piercing the Corporate Veil[74]

In Texas, veil-piercing "is not an independent cause of action, but is instead a means of imposing liability for an underlying cause of action."[75]  Under this theory, "courts disregard the corporate entity when there exists such unity between corporation and individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice."[76]  A plaintiff can prove such unity exists by providing "evidence of the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership[,] and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."[77]

This "exceptional" method of recovery[78] is appropriate "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."[79]  The Texas Supreme Court has enumerated examples of when veil-piercing is appropriate, including when a party uses the corporate fiction to perpetrate fraud, to make one corporation "a mere tool or business conduit of another corporation," to

---

[74] BIT International's complaint labels this cause of action "Greenlee, BIT[] LLC, and [BIT] Foundation: Piercing the Corporate Veil."  Doc. 46 at 15.  Since BIT Foundation is not a party to this lawsuit, the Court considers this claim only against Greenlee and BIT LLC.

[75] *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[76] *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990).

[77] *Id.* (cleaned up).

[78] *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) ("[D]isregard of the legal fiction of corporate entity is an exception to the general rule which forbids disregarding corporate existence." (cleaned up)).

[79] *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986), *superseded by statute on other grounds as stated by SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008).

"evad[e] an existing legal obligation," to create a monopoly, "to circumvent a statute," or to protect a crime.[80] "There must be something more than mere unity of financial interest, ownership[,] and control[.]"[81] In short, "[t]he plaintiff must prove that he has fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result."[82]

BIT International asks the Court to pierce the corporate veil of BIT Foundation to hold Greenlee and BIT LLC liable for BIT Foundation's alleged wrongdoing, but it again offers only inadequate evidence. BIT International's complaint marshals a host of accusations against Greenlee and BIT LLC that it says justify veil-piercing: "siphoning funds for personal use," "failure to maintain company records" or "file required tax filings," "total domination by Greenlee in the management of BIT[] LLC and [BIT] Foundation," and "commonality" in "staff, facilities, activities, management, and financial affairs" between Greenlee, BIT LLC, and BIT Foundation.[83] But weighed against the summary-judgment record, these claims are all bark and no bite—or, in legal terms, all allegation and no evidence.

As to BIT LLC, BIT International's summary-judgment evidence points only to the similarity between the names and the common owner, Greenlee, to convince the Court that BIT LLC is an alter ego of BIT Foundation.[84] Not all companies with

---

[80] *Id.* at 272 (cleaned up).

[81] *Lucas*, 696 S.W.2d at 374.

[82] *Id.* at 375.

[83] Doc. 46 at 15.

[84] Doc. 252 at 7 (from Beasley's declaration: "I told [Greenlee] the similar names [of BIT LLC and BIT Foundation] were confusing, could be deemed unethical and deceptive, and . . . could jeopardize the taxing status of the nonprofit entity.").

similar names are alter egos of each other, even if owned by the same person. At best, this indicates unity between the two companies, but mere unity without wrongdoing is inadequate to justify veil-piercing.[85] And BIT International alleges no specific wrongdoing against BIT LLC.

In addition to unity, BIT International's veil-piercing theory still requires evidence that declining to impose this remedy would promote injustice. It has no such evidence. Even assuming the truth of BIT International's conclusory allegation that "Greenlee had been receiving nonprofit donations for years[] and keeping the money for himself," BIT International has not shown why the funds Greenlee allegedly kept actually belong to BIT International.[86] Without showing why it is entitled to the donations at issue, BIT International cannot establish that injustice would result if the Court does not pierce the corporate veil. And though BIT International claims it will suffer injury unless the veil is pierced because it has lost donations it was allegedly entitled to, injury alone, without evidence of wrongdoing, is insufficient to warrant veil-piercing.

Piercing the corporate veil is a drastic remedy, and it requires proof of unity between the parties and that injustice would result if the veil is not pierced. BIT International has not shown unity between BIT LLC and BIT Foundation, nor has it shown any wrongdoing by BIT LLC that would lead to injustice absent veil-piercing. Even assuming BIT International has established unity between Greenlee and BIT

---

[85] *Lucas*, 696 S.W.2d at 374.

[86] Doc. 252 at 9.

Foundation, it has not shown why declining to pierce the veil will promote injustice. Accordingly, the Court cannot apply this theory of recovery.

### e. Tortious Interference with Contract

A claim for tortious interference with contract[87] requires four elements: "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred."[88]  The act need not cause an actual breach of the contract, but "the defendant must have intended to induce a breach (even if unsuccessful), thereby making performance more difficult in some way that injured the plaintiff."[89]  BIT International points to five alleged contracts and argues that BIT LLC and Greenlee tortiously interfered with all of them.

First, BIT International says Greenlee and BIT LLC tortiously interfered with an alleged contract between BIT International and Greenlee for "a royalty-free license to use its trademarks."[90]  But Beasley's declaration states that Greenlee owned the trademark and was a party to the alleged oral contract with BIT

---

[87] BIT International's live complaint is unclear as to whether it alleges tortious interference with contract, tortious interference with prospective business relationship, or both.  Doc. 46 at 14–15. Because BIT International's summary-judgment response addresses only tortious interference with contract, it has abandoned any claim for tortious interference with prospective business relationship. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that a plaintiff's "failure to pursue [a] claim beyond her complaint constituted abandonment").

[88] *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995).

[89] *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016).

[90] Doc. 251 at 7–8.

International,[91] and "a party cannot tortiously interfere with its own contract."[92] Thus, this alleged contract cannot support BIT International's claim.

Second, BIT International says that Greenlee tortiously interfered with its contracts with various third-party local Blacks in Technology chapters by falsely telling them that Beasley was no longer associated with the Blacks in Technology brand. According to Beasley's declaration, six chapters "asked to be released from their contract" as a result of Greenlee's representations—in Portland, Las Vegas, Raleigh-Durham, Indianapolis, Washington, D.C., and Tampa—and BIT International "let them go."[93] Beasley's declaration adds that, acting on behalf of BIT International, he "refunded over $2,000 in member dues and chapter fees owned by [BIT] International" because, "[i]f people wanted to leave BIT International, we let them go."[94]

These alleged injuries cannot support this claim. "Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference."[95] "A third-party's efforts to induce another to exercise his right to dissolve a contract at will or to terminate contractual relations on notice does not constitute tortious

---

[91] Doc. 252 at 5, 12.

[92] *Holloway*, 898 S.W.2d at 796; *see Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997) ("[A] person must be a stranger to a contract in order to tortiously interfere with it[.]").

[93] Doc. 252 at 12.

[94] *Id.* (emphasis removed).

[95] *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *see Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 576 (Tex. App.—Austin 1958, writ ref'd n.r.e.) (holding that "it was entirely legitimate" for "a business competitor . . . to persuade [a third party] by lawful means to exercise its right to cancel the contract with [the plaintiff]").

22

interference with contract under Texas law."[96]  Beasley's declaration confirms that there was no breach.  Instead, the third parties exercised their rights under BIT International's policy—providing third parties the right to leave BIT International if they wanted to go.  Since BIT International's own summary-judgment evidence confirms that these contracts dissolved lawfully, these contracts cannot support BIT International's claim.

Third, BIT International says Greenlee and BIT LLC tortiously interfered with a contract with an entities described only as "The Hartford."[97]  Beasley's declaration says that Greenlee "[led] The Hartford in[to] believing that I had left Blacks in Technology, which was not true, and caused a sales meeting with [BIT] International to be cancelled."[98]  This ground fails to satisfy the first element, which requires the existence of a contract.  BIT International's slim evidence makes no mention of a contract and provides no additional details about the planned sales meeting, "The Hartford," or the cost to BIT International when the meeting was cancelled.  "A general statement that a contract . . . exists, without details about the specific terms of the contract, is insufficient to maintain a tortious-interference-with-contract claim."[99]  Thus, since there is no specific evidence of a contract, this incident cannot support BIT International's claim.

---

[96] *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985).

[97] Doc. 252 at 12.

[98] *Id.* at 11.

[99] *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Fourth, BIT International says that BIT LLC and Greenlee tortiously interfered with an alleged contract to transfer funds from BIT Foundation to BIT International. The Court has already discussed the lack of evidence demonstrating such a contract ever existed. But assuming it did exist, Greenlee could not have interfered with it because he is allegedly a party to the contract, and "a party cannot tortiously interfere with its own contract."[100] Thus, this alleged contract cannot support BIT International's claim.

Finally, BIT International says that BIT LLC and Greenlee tortiously interfered with an alleged contract for someone to pay Beasley $46,475 for his services. For support, it points to Beasley's declaration that, by the time he formally separated from Greenlee and BIT LLC, he "had worked 845 hours, for which [he] was to be paid $55 an hour, which then amounted to $46,475.00."[101] Beasley said that, "[d]ue to the actions of Greenlee . . . , I was never paid for my time."[102] This allegation cannot support BIT International's claim because it is not evidence of a specific contract. It fails to explain who was supposed to pay Beasley, who the parties to the alleged contract were, or what work Beasley had performed. And critically, it fails to connect the dots to explain why Greenlee's actions proximately caused him to not be paid. Due to the extreme vagueness of this alleged contract, it cannot support BIT International's claim.

---

[100] *Holloway*, 898 S.W.2d at 796.

[101] Doc. 252 at 13.

[102] *Id.*

BIT International has failed to identify a contract that can form the basis of its tortious-interference-with-contract claim, so there is no genuine dispute of material fact, and this claim fails as a matter of law. Thus, the Court **GRANTS** summary judgment on this claim.

### f.   Fraudulent Inducement

BIT International's final claim—against Greenlee only—is fraudulent inducement based on alleged promises Greenlee made that allegedly induced Beasley to form BIT International. Fraudulent inducement requires a plaintiff to prove that:

> (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.[103]

Greenlee introduced evidence showing that BIT International can't meet that fourth element, and BIT International offers no response. Beasley could not have relied on any representations from Greenlee in forming BIT International because he formed it before the two men ever met each other. Initially, BIT International was called BIT National. In an email from Beasley to Greenlee, Beasley stated, "Actually, I incorporated . . . BIT National without talking to you or Andrew."[104] After relating how "Andrew blew up" when Beasley told him what he'd done, Beasley's email continues, "[s]o, I reached out to you [*i.e.*, Greenlee]. [] BIT National already existed

---

[103] *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).

[104] Doc. 247-8 at 6.

in Texas[.]"[105]   Finally, Beasley's email plainly states, "[w]hen I first incorporated 'National,' I didn't know you."[106]

Beasley could not have relied on a representation from Greenlee when he formed BIT International because, as he stated himself, the two men didn't know each other at that point.  So, this claim fails as a matter of law.  BIT International's response looks only to the first three elements, arguing that Greenlee said BIT International could use his trademarks and then changed his position later.  But if Beasley didn't rely on that representation—even if it was a misrepresentation—this claim cannot succeed.  Accordingly, the Court **GRANTS** summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** BIT International, BUILT, and BIT Texas's motion for judgment on the pleadings and **DISMISSES WITHOUT PREJUDICE** both of BIT LLC's claims against BIT International, BUILT, and BIT Texas.  And the Court **GRANTS** BIT LLC and Greenlee's motion for partial summary judgment against BIT International.  Each party shall bear its own costs on BIT International's claims against BIT LLC and Greenlee.

BUILT and BIT Texas have two counterclaims—both for trademark cancellation—pending against BIT LLC and Greenlee.  BUILT and BIT Texas filed their counterclaims on September 14, 2022, and BIT LLC and Greenlee never

---

[105] *Id.*

[106] *Id.* at 7.

26

answered.  The Court's deadline for motions to amend pleadings was November 30, 2022.[107]  Per Local Rule 55.1, the Court **ORDERS** BUILT and BIT Texas to move for entry of a default against BIT LLC and Greenlee on these counterclaims.

    **IT IS SO ORDERED** this 26th day of June, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[107] Doc. 234 at 1.