UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLACKS IN TECHNOLOGY INTERNATIONAL, | § § § § § | |
| *Plaintiff,* | § § | |
| v. | § | Civil Action No. 3:20-CV-3008-X |
| GREGORY GREENLEE, DENNIS SCHULTZ, and BLACKS IN TECHNOLOGY, LLC, | § § § § § § | |
| *Defendants.* | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dennis Schultz's second motion for summary judgement. (Doc. 329). After careful consideration, and for the reasons below, the Court **GRANTS** the motion.

The Court believes the only claims remaining after this Order are: (1) Blacks in Technology LLC's (BIT LLC) trademark claim against Blacks in Technology International (International), Blacks United in Leading Technology (BUILT), and Blacks in Technology Texas (BIT Texas); and BIT Texas and BUILT's counterclaims against BIT LLC and Gregory Greenlee for cancellation of two trademarks. So, the parties to file the joint pretrial order due February 24, 2025, are BIT LLC, International, BUILT, BIT Texas, and Greenlee.[1]

---

[1] If any party believes the Court has missed an active claim, it should file a status report within fourteen days of this Order.

1

## I. Background

This case has taken a winding and checkered path. Part of the confusion stems from the names of the three entities around which it revolves: Blacks in Technology International (International), the original plaintiff; Blacks in Technology LLC (BIT LLC), the original defendant; and Blacks in Technology Foundation (BIT Foundation), a non-party. The profusion of claims and counterclaims among the various participants has certainly not dispelled that confusion.

Ultimately, this lawsuit arose from a breakdown in business relations between Peter Beasley on the one hand and Gregory Greenlee and Dennis Schultz on the other.[2] Greenlee founded BIT Foundation, a not-for-profit, and BIT LLC, its for-profit counterpart. Schultz was a longtime volunteer and, later, an employee of BIT Foundation. Beasley started his own not-for-profit, International, and tried to join forces with Greenlee and Schultz. At issue today are the claims International brings against Schultz for tortious interference with a contract and breach of contract.

Schultz began working as a volunteer for BIT Foundation in 2017. Over the course of Schultz's time there, Beasley started the related entity, International. In April 2020, Schultz agreed to serve on International's board of directors with its first meeting planned for August 18 of that year. Schultz also signed an agreement requiring him to operate his local BIT group as a subsidiary chapter under International and to cease operations of the chapter if he ever left International.

---

[2] The Court has repeatedly summarized the circuitous history of this case elsewhere on the docket. Docs. 218 at 2–5; 227 at 2–3; 260 at 2.

The day before the first board meeting, Schultz circulated an email to the International board members and potentially others, warning them of various things he'd discovered about Beasley, including information about past lawsuits and criminal charges. International maintains that the statements in the email were false, but the email caused six of eight board members to resign before the first meeting. The same day, Schultz wrote that he would "not be honoring any agreements executed" with Beasley and International and planned to "continue to operate [his chapter] independently."[3]

## II.  Legal Standard

Schultz seeks summary judgment on two of International's claims: tortious interference and breach of contract. International brought its tortious interference claim against Greenlee as well, but the Court has already disposed of the claim against him.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] And a fact is material if it "might affect the outcome of the suit under the governing law."[6] The moving party must "demonstrate the absence" of genuine factual disputes "but need not *negate* the

---

[3] Doc. 340, Ex. A at 8.

[4] FED. R. CIV. PROC. 56(a).

[5] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

elements of the nonmovant's case."[7]

If the moving party satisfies its burden, the nonmoving party "must set forth specific facts showing that there is a genuine [dispute] for trial."[8] The nonmoving party cannot satisfy its burden with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[9] The Court must "consider the whole record when ruling on a motion for summary judgment."[10]

### III. Analysis

#### a. Evidentiary Objections

International takes issue with the two declarations Schultz submits to support his motion for summary judgment. It argues that Schultz's declaration is invalid because it does not expressly state it was based on personal knowledge. Though a declaration "must be made on personal knowledge,"[11] nothing requires Schultz to expressly state as such in the declaration itself. The content of the declaration refers exclusively to Schultz's own actions and experiences, and Schultz certified that the contents "is true and correct" under penalty of perjury.[12] This complies with the procedural requirements of a declaration.

---

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

[8] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968) (cleaned up).

[9] *Little*, 37 F.3d at 1075 (cleaned up).

[10] *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

[11] Fed. R. Civ. P. 56(c)(4).

[12] *See* Doc. 331, Ex. A.

4

International also argues the Court should consider the declarations of both Schultz and Greenlee to be sham affidavits. The sham affidavit rule prevents nonmovants from escaping summary judgment by creating a fact issue with "an affidavit that impeaches, without explanation, sworn testimony."[13] But not every discrepancy merits application of the doctrine. "[T]he bar for applying the doctrine is a high one, typically requiring affidavit testimony that is inherently inconsistent with prior testimony."[14]

Aside from the fact that International here applies the doctrine backward (to invalidate an affidavit in support of summary judgment rather than one seeking to avoid it), it has failed to show that Schultz and Greenlee declarations are shams. International provides only one specific example of contradiction in testimony: Greenlee "stating that there was no diversion of funds from [] International to BIT Foundation."[15] International cited no prior testimony that contradicts this, and the Court has found none in its search. As to Schultz's declaration, International says it "should be discredited as a sham affidavit for the same reasons."[16] This is insufficient to show inherent inconsistency in Schultz's statements, and the Court has found none on its own.

Therefore, the Court will consider both Schultz and Greenlee's declarations in its analysis.

---

[13] *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 477 (5th Cir. 2022).

[14] *Id.* (cleaned up).

[15] Doc. 334 at 8.

[16] Doc. 334 at 8.

### b. Tortious Interference with Contract

The first claim International brings against Schultz is for tortious interference with a contract.[17] A claim for tortious interference with a contract requires four elements: "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred."[18] The interfering act need not cause an actual breach of the contract, but "the defendant must have intended to induce a breach (even if unsuccessful), thereby making performance more difficult in some way that injured the plaintiff."[19]

International says that Schultz tortiously interfered with the contracts it had with various third-party Blacks in Technology chapters through his August 17, 2020, email. In the email, Schultz notified other International chapter leaders and prospective board members that he was leaving International and would no longer honor the agreements he signed. International states that, consequently, seven chapter leaders "asked to be relieved of their contract duties with [] International,

---

[17] International's live complaint brought this claim over only the agreements it had with chapter members. *See* Doc. 46, ¶¶ 70–71. International appears to try and expand its claim to include additional contracts through its response to Schultz's summary judgment motion. *See* Doc. 334 at 4–5. Summary judgment is not the stage for bringing new claims, and "courts in this circuit routinely decline to consider new claims asserted at the summary-judgment stage of litigation." *Martinez v. Prudential Ins. Co. of Am.*, 615 F. Supp. 3d 519, 541 (S.D. Tex. 2022) (summarizing the various approaches courts in the Fifth Circuit have taken to new claims brought at summary judgment); *see also Garza v. City of La Porte*, 160 F. Supp. 3d 986, 993 (S.D. Tex. 2016) ("[A] party cannot use a motion for summary judgment to raise new claims."); *U.S. ex rel DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2022) ("[T]he Supreme Court has mandated a liberal pleading standard . . . . This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage . . . ."). Therefore, the Court will only consider the claim International actually pled: that Schultz tortiously interfered with the contracts it had with local chapters.

[18] *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995).

[19] *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016).

and asked for their fees and dues returned."[20]  Beasley's declaration adds that, acting on behalf of International, he "refunded over $2,000 in member dues and chapter fees owned by International" because, "[i]f people wanted to leave BIT International, we let them go."[21]

As the Court explained regarding International's similar claim against Greenlee, Schultz convincing chapter leaders to exercise their contractual right to terminate their relationship with International is not tortious interference. International argues that Schultz's statements in his email distinguish his conduct from Greenlee's such that the Court should not dismiss International's claim against Schultz like its claim against Greenlee.

But International fails to provide the Court with any evidence that the chapter members breached their contracts by leaving.  The question is not whether Schultz influenced the members' decisions generally but whether he tortiously interfered with their contracts.  "Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference."[22]  "A third-party's efforts to induce another to exercise his right to dissolve a contract at will or to terminate contractual relations on notice does not constitute tortious interference with contract under Texas law."[23]  Beasley's declaration confirms that the third parties exercised their rights

---

[20] Doc. 334 at 4.

[21] Doc. 252 at App. A-9.

[22] *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *accord Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 576 (Tex. App.—Austin 1958, writ ref'd n.r.e.) (holding that "it was entirely legitimate" for a business competitor "to persuade [a third party] by lawful means to exercise its right to cancel the contract with [the plaintiff]").

[23] *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985).

under International's internal policy—providing third parties the right to leave if they wanted to go.  Since International's own evidence confirms that these contracts dissolved lawfully, the contracts cannot support International's claim.  The Court **GRANTS** summary judgment for Schultz on International's tortious interference claim.

### c. Breach of contract

International next brings a claim against Schultz over breach of contract.  "To succeed on a breach of contract claim, a plaintiff must show: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[24]  "In Texas, the universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage *actually sustained*."[25]  The damages are meant to restore the injured party to the economic position they'd have been in if the breaching party had performed.[26]

In its response to Schultz's motion for summary judgment, International asserts that Schultz violated the Board Agreement he signed.  However, the Board Agreement contains an express and unqualified provision allowing board members to

---

[24] *Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 813 (Tex. App.—Dallas 2013, no pet.).

[25] *Hoffman v. L&M Arts*, 838 F.3d 568, 585 (5th Cir. 2016) (cleaned up).

[26] *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

resign.[27]  International does not refute that Schultz resigned in an email to Beasley, so there is no evidence Schultz breached the Board Agreement.

The Court now moves to the Subsidiary Chapter Agreement.  Schultz contests only the fourth element: damages.  In Texas, "a party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural."[28] "Thus, the absence of a causal connection between the alleged breach and the damages sought will preclude recovery."[29]

In a case in this district, the court granted the defendant's motion for summary judgment when the plaintiff failed to provide "a damages calculation, a damages model, or an expert report on any damages resulting from the alleged breach, and did not supplement its discovery responses that generally claimed 'economic damages.'"[30] The defendant, a former employee of the plaintiff whom the plaintiff alleged had violated its non-disclosure agreement, claimed the plaintiff "ha[d] not articulated any damages resulting from [the defendant's] alleged breaches."[31]  The court looked to the plaintiff, to which the burden shifted to show evidence of damages, but the plaintiff still failed "to identify specific evidence in the record showing that there [wa]s a genuine fact issue on the damages element."[32]

---

[27] Doc. 335, Ex. A.

[28] *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[29] *Id.*

[30] *Dewolff, Boberg & Assoc. v. Clark*, 2024 WL 4703085, at *3 (N.D. Tex. Nov. 6, 2024) (Kinkeade, J.).

[31] *Id.* (cleaned up).

[32] *Id.* at *4.

In another case, two business partners agreed to open a restaurant together, with one contributing capital and the other contributing time and labor.[33] The capital partner never deposited the promised capital, breaching the operating agreement.[34] However, the court found a dispositive lack of evidence demonstrating any damages the other partner suffered.[35] The nonbreaching partner "failed to offer any evidence showing what economic position he would have occupied had [his partner] not breached the operating agreement."[36]

International alleges it suffered damages from being "unable to continue operating within the New York Metropolitan area without incurring significant expense of time and money to develop the base of participants in the area."[37] But "[n]eedless to say, unsubstantiated assertions are not competent summary judgment evidence."[38] The record reflects the fact that Schultz brought a preexisting BIT chapter to International; he did not assume leadership over International's local members and then abscond with them. Therefore, any damages International claims from the need to develop a base of participants in the area were not caused by Schultz. And conversely, International fails to provide evidence of any damages in lost monetary benefit it would have gained from Schultz's performance.

---

[33] *Moayedi v. Arabghani*, 2023 WL 6977815, at *7 (Tex. App.—Houston [1st Dist.] Oct. 24, 2023, no pet.).

[34] *Id.*

[35] *See id.*

[36] *Id.*

[37] Doc. 46 at 16.

[38] *Forsythe v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

International's only mention of damages in its response to Schultz's summary judgment motion is the claim that "International can prove damages for breach of contract through the amount of diverted funds and lost man-hours."[39] But there is no evidence that International had any claim to that sponsor money other than the provision in the Subsidiary Agreement that requires chapters to pay 40% of their sponsorships to International.[40] And nothing in any evidence or brief suggests Schultz obtained the sponsor money as a representative for his New York chapter; his deposition testimony states the money was for BIT Foundation, not for his chapter.[41]

International's damages are too attenuated from Schultz's breach to suffice in establishing a claim for breach of contract. Therefore, the Court **GRANTS** summary judgment as to International's breach of contract claim.

### d.  Immunity under the Texas Charitable Immunity and Liability Act

To add a belt to the suspenders above, the Court now turns to Schultz's affirmative defense. Schultz argues that he is immune to International's claims because he was an unpaid volunteer when the relevant events occurred. The Texas Charitable Immunity and Liability Act of 1987 (the Act) shields volunteers of charitable organizations "from civil liability for any act or omission resulting in death, damage, or injury if the volunteer was acting in the course and scope of the volunteer's

---

[39] Doc. 334 at 2.

[40] Doc. 335, Ex. B.

[41] Doc. 335, Ex. R ("What [Disney, a sponsor] w[as] giving us was going to go to the Foundation and not to me. . . . That wasn't even going to my chapter.").

11

duties or functions, including as an officer, director, or trustee within the organization."[42]

The parties do not dispute that BIT Foundation is a 501(c)(3), which qualifies it as a charitable organization under the Act.[43] Schultz also suggests International counts as a charitable organization as an "organization organized and operated exclusively for the promotion of social welfare by being primarily engaged in promoting the common good and general welfare of the people in a community."[44] International indeed refers to itself as a not-for-profit corporation.[45] The disagreement stems from three arguments International makes: (1) that Schultz volunteered not for BIT Foundation but for BIT LLC, which is BIT Foundation's for-profit affiliate; (2) that he received payment from BIT Foundation and is thus not a volunteer; and (3) that his actions over which International sues did not fall within his volunteer duties.

On the first issue, International fails to support the claim that Schultz volunteered for BIT LLC instead of BIT Foundation. International points to Schultz's deposition testimony in which he does not know the legal name of "the community portion" of BIT LLC for which he volunteered because "there was no formal agreement signed."[46] When asked whether he was an employee of BIT LLC, Schultz

---

[42] Tex. Civ. Prac. & Rem. § 84.004(a).

[43] *Id.* § 84.003(1)(A).

[44] *Id.* § 84.003(1)(B).

[45] Doc. 46, ¶ 1.

[46] Doc. 289, Ex. D at App. 23.

then clarified that he was not. This does not support the claim that Schultz volunteered for BIT LLC. His declaration states unequivocally that he was an unpaid volunteer for BIT Foundation until September 2021, and his prior deposition testimony does not refute this.

The Court disagrees with International as to the second issue as well. The Act defines a volunteer as "a person rendering services for or on behalf of a charitable organization who does not receive compensation in excess of reimbursement for expenses incurred."[47] And in one of the few cases to cite this statute, a Texas appellate court upheld immunity under the Act for both current and former board members who had been volunteers at the time of the relevant events.[48]

In his declaration, Schultz states he was never paid for his work with any of the BIT entities until September 24, 2021, when BIT Foundation hired him as an Executive Director.[49] Greenlee's testimony supports this. When asked in a deposition if BIT Foundation ever paid Schultz, he said Schultz was paid a salary from September to December of 2021, along with a bonus in December.[50] International argues a fact issue exists here as to the dates of these payments because it has not received the contract formalizing the payments. While International (and the Court) may prefer more evidence to less, lack of additional corroborating evidence does not create a fact dispute.

---

[47] Tex. Civ. Prac. & Rem. § 84.003(2).

[48] *Brown v. Hensley*, 515 S.W.3d 442, 448–49 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

[49] Doc. 331, Ex. A, ¶ 4.

[50] Doc. 335, Ex. F at App. 42–43.

13

The bulk of International's allegations against Schultz arise from events that occurred between April and September of 2020. The latest date in International's claims against Schultz is September 16, 2020. At that point, Schultz was an unpaid volunteer under the Act.

Finally, International claims Schultz has failed to identify his duties as a volunteer within the scope of which he acted. But ironically, International's own Board Agreement with Schultz outlines the duties and expectations of a board member,[51] and Schultz acted within them. The agreement states board members will "discharge the director's duties, including duties as a committee member, in good faith, with ordinary care, and in a manner the director reasonably believes to be in the best interest of the corporation."[52] Further, it requires board members "to actively promote Blacks in Technology."[53] And for BIT Foundation, Schultz states that he provided free services as a web designer beginning in 2017 and served as an unpaid executive director beginning in 2020.

The disconnect in this case seems to stem from International conflating itself with Peter Beasley. Schultz did not agree to act in Beasley's best interest or even to work with him specifically. He agreed to act in International's best interest and promote Blacks in Technology. By warning other members of Beasley's concerning history, Schultz claims he was doing just that. Further, Schultz was at all times a volunteer of BIT Foundation as well. As a web designer and executive director of BIT

---

[51] Doc. 46, Ex. 4.

[52] Doc. 46, Ex. 4.

[53] Doc. 46, Ex. 4.

Foundation, it falls reasonably within Schultz's function as a volunteer to protect the integrity of the BIT brand. Even if Schultz did not become an executive director until after he broke with International,[54] as a volunteer who helped keep BIT Foundation up and running, it was within his function to email fellow members and inform them of his findings about someone he perceived to be a threat to the organization.

In his declaration, Schultz claims he did not understand the relationship between International and BIT Foundation—that he believed his roles as a chapter president and board member under International "were part of a reorganization of BIT Foundation's corporate entities."[55] His August email supports this. In it, Schultz says he "jumped in with both feet" on the "prospect of a BIT non-profit that consolidated the chapters, added structure[,] and centralized resources."[56] But at all points, Schultz exhibited loyalty to the overarching BIT brand and mission, ending his email to the board members and chapter leaders by stating, "The BIT brand is one that I will continue to stand behind because the mission is righteous."[57] He expressed desire to "determine a path forward for the non-profit and our respective chapters without Peter Beasley," writing, "I'd love to see the non-profit move forward the right way."[58]

---

[54] Schultz states only that he became executive director in 2020; he does not specify when. *See* Doc. 331, Ex. A, ¶ 2.

[55] Doc. 331, Ex. A, ¶ 3.

[56] Doc. 340, Ex. A at 6.

[57] Doc. 334, Ex. A at 8.

[58] Doc. 334, Ex. A at 8.

As a volunteer for BIT Foundation and International, Schultz acted within his function when he sent the August emails and broke from International. Therefore, the Act shields him from liability arising from these actions.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Schultz's motion for summary judgment against International. Each party shall bear its own costs on International's claims against Schultz.

**IT IS SO ORDERED** this 30th day of January, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE